JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HANY TANIOUS,<br>        Plaintiff,<br><br>            v.<br><br>LANDSTAR SYSTEM, INC., et<br>al.,<br>        Defendants. | CV 19-1067 DSF (SHKx)<br><br>Order GRANTING Defendants'<br>Motion to Transfer (Dkt. 60) |

Defendants Landstar System, Inc. and Landstar Ranger, Inc. move
to transfer this action to the Middle District of Florida.  Dkt. 60-1
(Mot.).  Plaintiff Hany Tanious opposes.  Dkt. 62 (Opp'n).  The Court
deems this matter appropriate for decision without oral argument.  See
Fed. R. Civ. P. 78; Local Rule 7-15.

## I. Background

Landstar Ranger is a transportation company regulated by the
Federal Motor Carrier Safety Administration.  Dkt. 60-2 (Nelson Decl.)
¶ 3.  Landstar System is Landstar Ranger's "ultimate parent company."
Id. ¶ 2.  Both are Delaware corporations with their headquarters in
Jacksonville, Florida.  Id. ¶ 5.  Landstar Ranger's business model
involves connecting its network of "business capacity owners" (BCOs) –
individuals who provide their own trucks and drivers – with businesses
that have shipping needs.  Id. ¶ 4.  Landstar Ranger operates as a
middleman, "solicit[ing] shipments from customers and then mak[ing]
those shipments available to BCOs" on Landstar Ranger's
"technological and administrative platform."  Id.

Plaintiff is a California resident who contracted with Landstar Ranger as a BCO from July 22, 2012 until October 9, 2018.  Id. ¶ 12; Dkt. 38-1 (FAC) ¶ 16.  Plaintiff signed Independent Contractor Operating Agreements (ICOAs) with Landstar Ranger in 2012, 2015, and 2018, "which set[] forth the terms of the business relationship between the parties."  Nelson Decl. ¶¶ 7, 11 & Ex. A (2012 ICOA), Ex. B (2015 ICOA), Ex. C (2018 ICOA) (collectively, the ICOAs or the Agreements).  Under the ICOAs, Plaintiff agreed to provide Landstar Ranger with "all transportation, loading and unloading, and other services necessary in connection with" any shipments he accepts through Landstar Ranger's platform.  Id. ¶ 14.  The Agreements are "intended by the Parties to create an independent contractor relationship and not an employer/employee[,] principal/agent[,] or master/servant relationship."  E.g., 2012 ICOA ¶ 16.

The ICOAs each contain an identical forum selection clause, which provides:

> INDEPENDENT CONTRACTOR [Plaintiff] and CARRIER
> [Landstar Ranger] hereby agree that any Dispute shall be
> brought exclusively in the state or federal courts situated in
> the County of Duval, City of Jacksonville, State of Florida
> and expressly and irrevocably consent to the exclusive
> jurisdiction and venue of such courts, including, without
> limitation, with respect to any Dispute for which injunctive
> relief of any kind whatsoever is sought.

2012 ICOA ¶ 24; 2015 ICOA ¶ 24; 2018 ICOA ¶ 25.  The Agreements define "Dispute" to include "any allegation of breach of or relating to this Agreement or of violations of any Applicable Law."  Id.

Defendants terminated Plaintiff's ICOA on October 9, 2018.  FAC ¶ 16.  On January 25, 2019, Plaintiff filed suit in San Bernardino Superior Court, asserting claims under the Fair Labor Standards Act, California Labor Code, and California Unfair Competition law.  See Dkt. 1-1.  The claims stem from Plaintiff's contention that Defendants improperly classified him as an independent contractor, rather than an

employee.  Defendants removed, see Dkt. 1, and now seek to transfer the case to the Middle District of Florida pursuant to 28 U.S.C. § 1404(a).  Defendants have also moved to dismiss Plaintiff's claims under Rule 12(b)(6).  See Dkt. 58 (MTD).[1]

## II. Legal Standard

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  "In the typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion . . . must evaluate both the convenience of the parties and various public-interest considerations."  Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas, 571 U.S. 49, 62 (2013).  "The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum.'"  Id. at 63 (quoting Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 31 (1988)).

The presence of a valid forum-selection clause requires the district courts to adjust its usual § 1404(a) analysis in three ways:  (1) "the plaintiff's choice of forum merits no weight," (2) the court "should not consider arguments about the parties' private interests," and (3) a "transfer of venue will not carry with it the original venue's choice of law rules."  Id. at 63-64.  Consequently, "a district court may consider arguments about public-interest factors only."  Id. at 64.  "Public-interest factors may include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law."  Id. at 64 n.6.  But courts should "ordinarily transfer the case to the forum specified in that

---

[1] In the interim, Plaintiff also voluntarily dismissed his class allegations, six claims asserted under California law, and all claims asserted against Landstar System CEO James Gatton and Landstar Ranger CEO Patrick O'Malley.  See Dkt. 57.

clause" and "[o]nly under extraordinary circumstances unrelated to the
convenience of the parties should a § 1404(a) motion be denied." <u>Id.</u> at
62.

### III. Discussion

Defendants contend that Plaintiff's claims fall within the scope of
the forum selection clause contained in the ICOAs and therefore seek to
transfer this action to the Middle District of Florida.  Plaintiff disputes
the authenticity of the ICOAs, contends that the ICOAs are the product
of Defendants' "fraud and overreaching," maintains that the forum
selection clauses do not cover the claims asserted in this case, and
argues that public interest factors support keeping his suit in this
district.  Plaintiff also argues that Defendants delayed too long before
moving to transfer venue.

The Court concludes that the forum selection clauses are valid, they
encompass this dispute, and transferring to Florida would not violate
California's public policy.  Defendants' motion is therefore GRANTED.

### A.   The Forum Selection Clauses are Valid and Enforceable

Before engaging in the analytical framework under <u>Atlantic Marine</u>,
the Court must first determine whether the forum selection clause is
valid and enforceable.  <u>See id.</u> at 63 n.5 ("presuppos[ing] a contractually
valid forum-selection clause").  "A forum selection clause is
presumptively valid; the party seeking to avoid a forum selection clause
bears a 'heavy burden' to establish a ground" that renders the clause
unenforceable.  <u>Doe 1 v. AOL LLC</u>, 552 F.3d 1077, 1083 (9th Cir. 2009)
(quoting <u>M/S Bremen v. Zapata Off-Shore Co.</u>, 407 U.S. 1, 17 (1972)).  A
forum selection clause is controlling unless the plaintiff makes a
"strong showing that: (1) the clause is invalid due to 'fraud or
overreaching,' (2) 'enforcement would contravene a strong public policy
of the forum in which suit is brought, whether declared by statute or by
judicial decision,' or (3) 'trial in the contractual forum will be so gravely
difficult and inconvenient that [the litigant] will for all practical
purposes be deprived of his day in court.'" <u>Yei A. Sun v. Advanced</u>

China Healthcare, Inc., 901 F.3d 1081, 1088 (9th Cir. 2018) (quoting Bremen, 407 U.S. at 15, 18).

### 1.    Authenticity of the Agreements

Defendants assert that Plaintiff "signed three ICOAs with Landstar Ranger" in 2012, 2015, and 2018, each containing the same forum selection clause.  Mot. at 2-3.  Plaintiff contests the authenticity of the 2015 and 2018 ICOAs, contending that Defendants "illegally altered" his signature and attached it to those Agreements.  Opp'n at 6.

To authenticate the ICOAs, Defendants provide the declaration of Gregg Nelson, the Vice President of Business Capacity Owner Retention for Landstar Transportation Logistics, Inc.  See Nelson Decl. ¶ 1.  Nelson states: "I have reviewed Landstar Ranger's records and determined that Tanious executed Agreements in July of 2012, August of 2015 and July of 2018, which governed his relationship with Landstar Ranger during that entire time period.  Those agreements are attached to this Declaration as Exhibits A, B and C, respectively."  Id. ¶ 11.

Ordinarily, this perfunctory statement would not suffice to authenticate the Agreements.  See Fed. R. Evid. 901(a) ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is").  However, Plaintiff concedes that he signed the 2012 ICOA and it is valid.  See Opp'n at 3 ("Plaintiff began his employment in July 4, 2012 and signed the Agreement for the period of three (3) years from the effective date and month-to-month thereafter").  That Agreement, which runs until July 3, 2015 (at the earliest), encompasses at least part of the dispute at issue in this litigation, as Plaintiff's claims cover "the four years preceding the filing [of] this action [on January 25, 2019]."  See FAC ¶ 19.[2]  Therefore, the forum selection clause in Plaintiff's 2012 ICOA –

---

[2] In addition, Plaintiff maintains that the 2012 ICOA continued to govern Plaintiff's employment with Defendants through the termination of his employment in 2018.  See Opp'n at 4 ("[2012] Agreement died when

assuming it is otherwise enforceable – is sufficient on its own to compel the transfer of this litigation.

In any event, the Court finds Plaintiff's objections to the authenticity of the 2015 and 2018 ICOAs to be insufficient.  Plaintiff asserts that "it appears the signatures have been illegally altered and attached to documents that Plaintiff neither has seen nor has reviewed."  Opp'n at 6.  But the Opposition provides no evidence to support this conjecture – not even a declaration from Plaintiff himself that he never signed these agreements.  See Carrillo-Gonzalez v. INS, 353 F.3d 1077, 1079 (9th Cir. 2003) (attorney argument "does not constitute evidence"); Local Rule 7-6 ("Factual contentions involved in any motion and opposition to motions shall be presented, heard, and determined upon declarations and other written evidence . . . alone").  Because Plaintiff has raised no factual disputes about the authenticity of the 2015 and 2018 ICOAs, the Court accepts their validity and finds that the parties' relationship is governed by the ICOAs.

The forum selection clauses are therefore "presumptively valid" and Plaintiff bears the "heavy burden" of establishing that they are unenforceable.  Doe 1, 552 F.3d at 1083.

## 2.    Fraud or Overreach[3]

To establish the invalidity of a forum-selection clause due to fraud or overreaching, Plaintiff must "show that *the inclusion of that clause in the contract* was the product of fraud or coercion."  Peterson v. Boeing Co., 715 F.3d 276, 280 (9th Cir. 2013).  Overreaching includes conduct short of fraud, involving "undue influence" or "overweening bargaining power."  See Bremen, 407 U.S. at 12.

---

defendants terminated Plaintiff in 11/2018"), 10 ("As described above, since the Agreement reflect[s] a beginning and ending employment, the Agreement was unilaterally terminated when defendants discharged Plaintiff.").

[3] Plaintiff does not argue that the forum selection clause "contravenes a strong public policy" in California or that Plaintiff will be "deprived of his day of court" if the clause is enforced.  Sun, 901 F.3d at 1088; Opp'n at 21-22.

Plaintiff contends that the forum selection clause is invalid due to fraud or overreach because (1) he "never had an opportunity to even review the Agreement," and (2) the Agreements are a "sham . . . designed as a ploy to misclassify Plaintiff as independent contractor rather than an employee." Opp'n at 6. Neither argument holds water.

First, Plaintiff's argument that he "never had an opportunity to even review the Agreement" is again unsupported by any evidence or admissible declarations. Instead, the Opposition notes that Plaintiff signed the 2012 ICOA "while he was driving his truck somewhere in [S]an Diego since he used the services of Staples office supplies to fax back the two pages to defendants." Opp'n at 6. Plaintiff's counsel extrapolates from this that "Plaintiff never had an opportunity to even review the Agreement." Id. This conclusion does not follow. That Plaintiff faxed a document from an office supply store in San Diego does not mean that he had no opportunity to read or review the document he signed. In any event, it is no defense that Plaintiff failed to read the Agreements before signing them (if that in fact happened). See Operating Engineers Pension Tr. v. Cecil Backhoe Serv., Inc.,795 F.2d 1501, 1505 (9th Cir. 1986) ("A party who signs a contract is bound by its terms regardless of whether he reads it or considers the legal consequences of signing it."); Restatement (Second) of Contracts § 23 ("[W]here an offer is contained in a writing either the offeror or the offeree may, without reading the writing, manifest assent to it and bind himself without knowing its terms.").

Nor does Defendants' purported misclassification of Plaintiff as an independent contractor, rather than an employee, render the forum selection clause in the ICOAs invalid. Plaintiff bears the burden of showing that the inclusion of the forum selection clause itself was due to fraud or coercion. Peterson, 715 F.3d at 280. In Peterson, the plaintiff was a former Navy pilot who was hired by Boeing to work as a flight instructor in Saudi Arabia. Id. at 278. Before leaving for Saudi Arabia, Petersen signed "a preliminary employment agreement" that did not contain a forum selection clause. Id. He was then "required to sign a new employment contract containing [a Saudi forum selection] clause upon his arrival in Saudi Arabia," was not given time to read the

new agreement, and was "told . . . that failure to sign it would result in his being forced to return immediately to the United States at his own expense." Id. at 282-83.  Under these circumstances, the court found "the forum selection clause's inclusion in the employment agreement was obtained via fraud or overreaching by taking undue advantage of Petersen's vulnerable position." Id. at 283.

Here, Plaintiff has not alleged that Defendants affirmatively misled him concerning the legal effect of the forum selection clause or that Defendants fraudulently inserted the clause into the ICOAs without Plaintiff's knowledge.  He argues only that his misclassification as an independent contractor was fraudulent.  See Opp'n at 20-22.[4]  In the absence of evidence of fraud or overreaching by Defendants, the Court finds the forum selection clauses valid.  See Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1141 (9th Cir. 2004) (finding no overreaching or fraud where employee voluntarily renewed his employment agreement for four consecutive years under no undue influence aside from the need to find a new job if he refused to sign).

### 3.    Delay

Plaintiff also complains that Defendants delayed "almost 18 months" before moving to transfer venue.  Opp'n at 20.  However, as Defendants correctly note, the delay in this action was largely created by Plaintiff (and his counsel).  See Dkt. 64 (Reply) at 5.  And Plaintiff has not shown that transferring the case now will cause further disruption or delay: discovery has not yet begun, nor has this Court addressed the substance of Plaintiff's claims; there is no suggestion that Defendants

---

[4] In Peterson, the Ninth Circuit stressed that the plaintiff provided a "sworn . . . admissible affidavit" attesting to the coercive circumstances under which he signed the agreement.  715 F.3d at 282-83 (holding that the "specific facts" asserted in plaintiff's affidavit were "sufficient, if true, to demonstrate that the forum selection clause's inclusion in the employment agreement was obtained via fraud or overreaching").  Here, Plaintiff has provided no admissible evidence concerning the Agreements to allow the Court to make any such finding.

are forum shopping.  See Powell v. United Rentals (N. Am.), Inc., No.
C17-1573JLR, 2019 WL 1489149, at *5-6 (W.D. Wash. Apr. 3, 2019)
(finding that waiver of a forum selection clause requires "clear,
decisive, and unequivocal conduct manifesting such an intent,"
including "where the party sues to enforce a contract in an
unauthorized forum" or "sit[s] on its forum selection rights . . . until
such time as things go unfavorably.").

In all, Plaintiff has not met his "heavy burden" of showing the forum
selection clauses at issue are unenforceable.  Doe 1, 552 F.3d at 1083.

## B.   Plaintiff's Claims Fall Within the Scope of the Forum Selection Clause

The forum selection clause at issue here covers "any allegation of
breach of or relating to this Agreement or of violations of any
Applicable Law."  2012 ICOA ¶ 24 (emphasis added).  Plaintiff argues
that the clause does not apply to his suit because he has asserted
violations of California and federal labor law, not breach of contract.
Opp'n at 11-12 ("The violations of the California labor laws are neither
related to the Agreement nor arise out of the terms of the Agreement,
nor seeks the interpretation of the Agreement").

Plaintiff's reading of the forum selection clause is too narrow.
"[F]orum-selection clauses covering disputes 'relating to' a particular
agreement apply to any disputes that reference the agreement or have
some 'logical or causal connection' to the agreement."  Sun, 901 F.3d at
1086 (9th Cir. 2018) (quoting John Wyeth & Bro. Ltd. v. CIGNA Int'l
Corp., 119 F.3d 1070, 1074 (3d Cir. 1997)).  "The dispute need not grow
out of the contract or require interpretation of the contract in order to
relate to the contract."  Id.

The broad forum selection clause in the ICOAs ("relating to this
Agreement") clearly encompasses the claims here.  The gravamen of
Plaintiff's suit is that Defendants misclassified him as an independent
contractor.  See FAC at 1 ("This case involves defendant-employers'
deliberate scheme to misclassify their truck drivers as independent
contractors, thereby denying them the fundamental protections due to

employees under California law"); Opp'n at 13-14 (describing Defendants as having "commit[ted] employment violations in misclassifying their employees as independent contractors and refusing to offer them their lawful benefits under California Labor laws"). This alleged misclassification of Plaintiff derives from the ICOAs and therefore this lawsuit does as well. See Robles v. Comtrak Logistics, Inc., No. 2:13-CV-00161-JAM-AC, 2015 WL 1530510, at *4 (E.D. Cal. Apr. 3, 2015) (finding the forum selection clause in a truck driver's independent contractor agreement encompassed his California labor law claims because "[t]he Contract governs the working relationship between the parties. It is the precise nature of that relationship that is at issue in this matter."). Plaintiff's claims fall within the scope of the ICOAs forum selection clauses.[5]

## C.   Public Interest Factors

Having concluded that the forum selection clause is valid, enforceable, and applies to this dispute, the Court may only consider

---

[5] Plaintiff also argues that the forum selection clause does not apply to his claims because he filed suit *after* Defendants terminated the ICOA in October 2018. See Opp'n at 8 ("The Agreement terminated at the time defendant discharged Plaintiff from his duties as [a] truck driver working . . . for defendants [and] so did the enforcement of that Agreement."). Because the Agreement was not in force when this suit was filed, Plaintiff argues, it cannot dictate the venue. Id. This argument fails. As a number of courts have recognized, "unless the contract explicitly indicates otherwise, a forum selection clause survives termination of the contract." Zaitzeff v. Peregrine Fin. Grp., Inc., No. CV-08-02874-MMM (JWJx), 2008 WL 11408422, at *9 (C.D. Cal. June 23, 2008) (quoting Claber, S.p.A. v. Lowe's Companies, Inc., C 98-4760, 1999 WL 166974, *3 (N.D. Ill. Mar. 23, 1999)); see also Saleemi and Sob, LLC v. Gosh Enterps., Inc., 467 Fed. Appx. 744, 744 (9th Cir. Feb. 3, 2012) (noting the rebuttable presumption "that dispute resolution provisions," including forum selection clauses, "survive termination of a contract" (citing Litton Fin. Printing Div. v. NLRB, 501 U.S. 190, 204 (1991)). Plaintiff offers no argument or evidence to support his contention that the parties intended the forum selection clause to "die[]" along with the Agreements in 2018. See Opp'n at 4.

the public interest factors enumerated in § 1404(a).  <u>Atl. Marine</u>, 571 U.S. at 64.[6]  Public interest factors "may include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.'"  <u>Id.</u> at 62 n.6 (quoting <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235, 241 n.6 (1981)).  "Because those factors will rarely defeat a transfer motion, the practical result is that forum selection clauses should control except in unusual cases."  <u>Id.</u> at 64.

**Court Congestion.**  Plaintiff contends that "[t]his court is not so congested that it cannot handle this case" and will do so quicker than a Florida court.  Opp'n at 17-19.  But Defendants adequately show that judges in this district bear similar caseloads to those in the Middle District of Florida and the districts take roughly the same amount of time to resolve civil suits.  Mot. at 12.  This factor is neutral.

**Familiarity with the Law**.  Plaintiff argues that this jurisdiction "is more familiar with the applicable law than is the Middle District of Florida."  Opp'n at 15.  However, "federal judges routinely apply the law of a State other than the State in which they sit."  <u>Atl. Marine</u>, 571 U.S. at 67.  Plaintiff identifies no "exceptionally arcane features" of California labor law "that are likely to defy comprehension by a federal judge sitting in [Florida]."  <u>Id.</u> at 68.

**California's Interest.**  Plaintiff raises California's "interest in enforcing its laws regulating the conduct of all those who operate in this state or are transients."  Opp'n at 17.  Assuming this factor weighs against transfer, this limited interest is not enough to tip the balance toward denial of Defendants' motion.

---

[6] Plaintiff's many arguments about his private interests, <u>see</u> Opp'n at 12-15, have no place in this analysis and the Court therefore does not consider them.  <u>See</u> <u>Sun</u>, 901 F.3d at 1091 ("Where the parties have agreed to a forum-selection clause, they 'waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation.'" (quoting <u>Atl. Marine</u>, 571 U.S. at 64)).

In all, Plaintiff has failed to establish that this is an "exceptional case" that defeats application of a valid forum selection clause. See <u>Atl.</u> <u>Marine</u>, 571 U.S. at 64 (public interest factors "will rarely defeat" a motion to transfer and thus "forum-selection clauses should control except in unusual circumstances").

## IV. Conclusion

The motion is granted and the case is transferred to the Middle District of Florida pursuant to 28 U.S.C. § 1404(a). The Court does not address Defendants' pending motion to dismiss and concludes that it is best considered by the Middle District of Florida.

IT IS SO ORDERED.

Date: June 15, 2020

Dale S. Fischer
United States District Judge